# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

JAMES SCHUSTER,

      Plaintiff,

v.

                             CASE NO.:

UBER TECHNOLOGIES, INC.,

      Defendant.

_____/

## COMPLAINT

1.      Unwanted "Robocalls" are the #1 consumer complaint in America today.

2.      The people complaining about harassing robocalls and text messages is increasing at an alarming rate. In 2015, 2,125,968 complained to the Federal Trade Commission (FTC) and Federal Communications Commission (FCC), in 2016 this number was 3,401,614 2016 and in 2017 it was 4,501,967.[1]

3.      Uber Technologies, Inc., the Defendant, sent text messages to the Plaintiff, James Schuster, a mindboggling 1,050 times although he never game them permission to text him and asked repeatedly for the text messages to stop.

4.      "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization.  They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991).  Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm*

---

[1] It is important to recognize these merely reflect the number of individuals that complained to these agencies; the number of people that have been victimized by illegal robocalling abuse could be close to 100,000,000 in the last 3 years

*Bank, F.S.B.*, 746 F. 3d 1242, 1256 (11th Cir. 2014).  Despite the penalties put in place over 26 years ago, robocall abuse continues to skyrocket.

5.    Plaintiff, James Schuster, alleges Defendant, Uber Technologies, Inc., texted him more than 1050 times in stark violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), Invasion of Privacy ("IOP"), and Intentional Infliction of Emotional Distress ("IIED").

6.    Robocalls and texts are very inexpensive to make.  As was noted in a Senate hearing on the subject: "With such a cheap and scalable business model, bad actors can blast literally tens of millions of illegal robocalls  over the course of a single day at less than 1 cent per minute." *Stopping Fraudulent Robocall Scams: Can More Be Done?: Hearing Before the Subcomm. on Consumer Prot., Prod. Safety, and Ins. of the S. Comm. on Commerce, Sci., and Transp.*, 113 Cong. 113-117 (2013) (statement of Lois Greisman, Assoc. Director, Division of Marketing Practices, Bureau of Consumer Protection, Federal Trade Commission).

7.    The TCPA was enacted to prevent companies like Uber Technologies, Inc. from invading American citizens' privacy and prevent illegal robocalls and text messages.

8.    Congress enacted the TCPA to prevent real harm.  Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; see also *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy").

9.    According to findings by the FCC—the agency Congress vested with authority to issue regulations implementing the TCPA—such calls are prohibited because, as Congress found,

automated or prerecorded telephone calls and texts are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

## JURISDICTION AND VENUE

10.    Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. §1331.

11.    Violations described in the Complaint occurred while Plaintiff was in Tampa, Florida.

## FACTUAL ALLEGATIONS

12.    Plaintiff is a natural person and citizen of the State of FL, residing in Tampa, Florida.

13.    Plaintiff is a "consumer" as defined in Florida Statute § 559.55(8) 15 U.S.C. § 1692(a)(3).

14.    Plaintiff is the "called party." *See Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014); *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

15.    Defendant is a Foreign Profit Corporation with its principal place of business in San Francisco, California , and conducts business in the State of Florida.

16.    Defendant is a "debt collector" as defined by Florida Statute § 559.55(7) and 15 U.S.C. § 1692(a)(6).

17.    Plaintiff is the regular user and carrier of the cellular telephone number at issue, (813) 210-4417.

18.    Plaintiff was the "texted party" during each text message subject to this lawsuit.

3

19.     Defendant intentionally harassed and abused Plaintiff on numerous occasions by texting him several times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

20.     Defendant did not have the "express consent" of the Defendant to text his cell phone.

21.     "Express consent" is narrowly construed by the Courts.

22.     It is the Defendant's burden to prove they had "express consent" per the TCPA to text the Plaintiff on his cell phone using an "automatic telephone dialing system" (ATDS).

23.     It is the Defendant's burden to prove they had "express consent" per the TCPA to text the Plaintiff on his cell phone using an ATDS for each account they were texting on.

24.     Defendant was put on notice Plaintiff did not want the Defendant contacting him.

25.     Defendant was told repeatedly that Plaintiff was the wrong person to contact.[2]

26.     Defendant did not have the express consent of the Plaintiff to text him on the accounts they texted him on.

27.     Plaintiff expressly revoked any express consent Defendant may have mistakenly believed it had for placement of text messages to Plaintiff's aforementioned cellular telephone number by the use of an ATDS or a pre-recorded or artificial voice.

28.     Defendant attempted to collect a debt from the Plaintiff by this campaign of telephone calls.

29.     Defendant sent at least one text to (813) 210-4417.

30.     Defendant sent at least one text to (813) 210-4417 using an ATDS.

---

[2] Defendant should have the call logs showing the exact number of texts and the recordings which should illustrate exactly what was said to the Defendant.

31.     Defendant sent at least ten (10) texts to (813) 210-4417.

32.     Defendant sent at least ten (10) texts to (813) 210-4417 using an ATDS.

33.     Defendant sent at least one hundred (100) texts to (813) 210-4417.

34.     Defendant sent at least one hundred (100) texts to (813) 210-4417 using an ATDS.

35.     Defendant sent at least three hundred (300) texts to (813) 210-4417.

36.     Defendant sent at least three hundred (300) texts to (813) 210-4417 using an ATDS.

37.     Defendant sent at least five hundred (500) texts to (813) 210-4417.

38.     Defendant sent at least five hundred (500) texts to (813) 210-4417 using an ATDS.

39.     Defendant sent at least one thousand (1,000) texts to (813) 210-4417.

40.     Defendant sent at least one thousand (1,000) texts to (813) 210-4417 using an ATDS.

41.     Defendant sent at least one thousand and one hundred (1,100) texts to (813) 210-4417.

42.     Defendant sent at least one thousand and one hundred (1,100) texts to (813) 210-4417 using an ATDS.

43.     Each text the Defendant sent to (813) 210-4417 in the last four years was made using an ATDS.

44.     Each text the Defendant sent to the Plaintiff's cell phone was done so without the "express permission" of the Plaintiff.

45.     Defendant has texted other people's cell phones without their express consent.

46.     Each text the Defendant made to the Plaintiff was made using an ATDS, which has the capacity to store or produce telephone numbers to be called or texted, without human

intervention, using a random or sequential number generator; and to dial such numbers as specified by 47 U.S.C § 227(a)(1).

47.    Plaintiff repeatedly requested the Defendant to stop texting his cell phone, however, the Defendant continued to send texts.

48.    Defendant sent text messages to Plaintiff's phone as last as 11:56 PM[3]

49.    Defendant has admitted to texting cell phones using an ATDS after that person asked for the texts to stop.

50.    Plaintiff's conversations with the Defendant putting them on notice that they did not want more phone texts were ignored.

51.    Defendant has sent approximately one thousand and fifty (1050) texts to Plaintiff's aforementioned cellular telephone number since in or about February of 2018 which will be established exactly once Defendant turns over their dialer records.

52.    Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abusive robotexts.

53.    Defendant has been sued in federal court where the allegations include: calling and texting an individual using an ATDS after the individual asked for the calls and texts to stop.

54.    By effectuating these unlawful text messages, Defendants have caused Plaintiff the very harm that Congress sought to prevent—namely, a "nuisance and invasion of privacy."

55.    Defendant's aggravating and annoying text messages trespassed upon and interfered with Plaintiff's rights and interests in his cellular telephone and cellular telephone line, by intruding upon Plaintiff's seclusion.

56.    Defendant's phone calls harmed Plaintiff by wasting his time.

---

[3] Timestamps can be shown in Exhibit A

6

57.     Moreover, "wireless customers [like Plaintiff] are charged for incoming calls whether they pay in advance or after the minutes are used."  In re: *Rules Implementing the TCPA of 1991*, 23 FCC Rcd 559, 562 (2007).  Defendant's phone calls harmed Plaintiff by depleting the battery life on his cellular telephone, and by using minutes allocated to Plaintiff by his cellular telephone service provider.

58.     Defendant's corporate policy and procedures are structured as to continue to text individuals like the Plaintiff, despite these individuals revoking any consent the Defendant may have mistakenly believed it had.

59.     Defendant's corporate policy and procedures provided no means for the Plaintiff to have her aforementioned cellular number removed from the call list.

60.     In the last 3 years, the Defendant has had 3,205 complaints reported to the Better Business Bureau (BBB), of which 1,078 of those complaints are classified as being related to "Billing/Collection Issues."[4]

61.     Plaintiff expressly revoked any consent Defendant may have mistakenly believed it had for placement of text messages to Plaintiff's aforementioned cellular telephone by the use of an ATDS or a pre-recorded or artificial voice immediately upon Defendant's placement of the texts.  Making money while breaking the law is considered an incentive to continue violating the TCPA and other state and federal statutes.

62.     Defendant never had the Plaintiff's expressed consent for placement of text messages to his aforementioned cellular telephone by the use of an ATDS or a pre-recorded or artificial voice.

---

[4] Uber Technologies; Customer Complaints Summary, *https://www.bbb.org/us/ca/san-francisco/profile/transportation/uber-technologies-1116-438996/complaints*

63.     None of Defendant's text messages placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

64.     Defendant violated the TCPA with respect to the Plaintiff.

65.     Defendant willfully or knowingly violated the TCPA with respect to the Plaintiff.

## COUNT I
### (Violation of the TCPA)

66.     Plaintiff incorporates Paragraphs one (1) through sixty-five (65).

67.     Defendant willfully violated the TCPA with respect to the Plaintiff each time they texted the Plaintiff after he revoked his consent to be texted by them using an ATDS or pre-recorded voice.

68.     Defendant knowingly violated the TCPA with respect to the Plaintiff, especially for each of the auto-dialed texts made to Plaintiff's cellular telephone after Plaintiff revoked his consent to be called by them using an ATDS or pre-recorded voice.

69.     Defendant, Uber Technologies, Inc. repeatedly sent non-emergency text messages to the wireless telephone number of Plaintiff using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

70.     As a result of Defendant's illegal conduct, Plaintiff suffered actual damages and, under § 227(b)(3)(B), is entitled to, inter alia, a minimum of $500.00 in damages for each such violation of the TCPA.

71.     Plaintiff is also entitled to, and does, seek injunctive relief prohibiting Defendant, Uber Technologies, Inc., from violating the TCPA in the future.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

<u>**COUNT II**</u>
**(Invasion of Privacy – Intrusion Upon Seclusion)**

72.     Plaintiff incorporates Paragraphs one (1) through sixty-five (65).

73.     Defendant through its conduct, has repeatedly and intentionally invaded Plaintiff's privacy.

74.     All of the texts made to Plaintiff's cell phone by Defendant and its agents using an automatic telephone dialing system were made in violation of the TCPA, and were unreasonable and highly offensive invasions of Plaintiff's right to privacy.

75.     Defendant's persistent autodialed texts to his cellular phone eliminated Plaintiff's right to be left alone.

76.     Defendant's autodialed text messages disrupted Plaintiff's privacy, disrupted Plaintiff's sleep, disrupted Plaintiff during mealtimes, disrupted Plaintiff during his work, and continually frustrated and annoyed Plaintiff.

77.     These persistent autodialed text messages eliminated the peace and solitude that the Plaintiff would have otherwise had in Plaintiff's home and anywhere else Plaintiff went with his cellular phone.

78.     By texting his cellular phone, Plaintiff had no escape from these texts either in his home or when he left the home.

79.     By persistently autodialing Plaintiff's cellular phone without prior express consent, Defendant invaded Plaintiff's right to privacy, as legally protected by the TCPA, and caused Plaintiff to suffer concrete and particularized harm.

80.     Defendant's harassing conduct and tactic of repeatedly auto dialing Plaintiff to his cellular telephone after requests to stop is highly offensive to a reasonable person.

81.     Defendant intentionally intruded upon Plaintiff's solitude and seclusion.

82.     As a result of Defendant's action or inaction, Plaintiff has been damaged.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

## COUNT III
### (Intentional Infliction of Emotional Distress)

83.     Plaintiff incorporates Paragraph one (1) through sixty-five (65).

84.     The harassing and abusive conduct, including the repetitive text messages to Plaintiff, have caused severe emotional harm and distress, embarrassment, aggravation, and other losses.

85.     It is beyond the pale of decency to text anybody 1050 times.

86.     The damage to the Plaintiff was and is immense.  The Plaintiff had a stunned sense of helplessness because he could not stop the texts despite asking Defendant to stop sending text messages that Plaintiff never even asked to recieve.

87.      To text somebody this amount of time is inhumane.

88.     It is utterly uncivilized to robotext someone 1050 times.

89.     If a person texted another person 1050 times, the sender would most likely be in prison for criminal harassment.

90.     This is especially true if the sender continued to make the calls after being told to stop and never had permission to call in the first place.

91.     The texts to Plaintiff by Defendant are harassing, aggravating and highly intrusive.

**WHEREFORE,** Plaintiff respectfully requests that judgment be entered against Defendant for punitive damages and such other and further relief as the Court shall deem just and proper.

<div style="margin-left: 40%;">

Respectfully submitted,

William "Billy" Howard
William "Billy" Peerce Howard, Esq.
Florida Bar No.: 0103330
Billy@TheConsumerProtectionFirm.com
Amanda J. Allen, Esq.
Florida Bar No.: 0098228
Amanda@TheConsumerProtectionFirm.com
The Consumer Protection Firm
4030 Henderson Boulevard
Tampa, FL 33629
Telephone: (813) 500-1500
Facsimile: (813) 435-2369
*Attorney for Plaintiff*

</div>